**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NICHOLAS KONTAKIS, | : | |
| | : | Civil Action No. 05-5124 (GEB) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| RONALD H. CATHEL, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner pro se
Nicholas Kontakis
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Counsel for Respondents
James L. McConnell
Somerset Co. Prosecutor's Ofc.
P.O. Box 3000
Somerville, NJ 08876

**BROWN, JR.,** Chief Judge

Petitioner Nicholas Kontakis, a prisoner currently confined at New Jersey State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are warden Ronald H. Cathel and the Attorney General of the State of New Jersey.

For the reasons stated herein, the Petition must be dismissed.

I. BACKGROUND

A. Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> These are the facts as established by the State. At around noon on March 25, 1985 Betsy Nickerson was driving on Railroad Avenue in Franklin Township when she observed a man and a woman standing outside the door of a black car. The driver's door was open and the woman had her back to the steering wheel. Nickerson saw the man push the woman onto the front seat of the car with enough force that her feet flew up.
>
> Nickerson pulled over and blew her horn. She yelled to some people to call the police. When she observed the couple again, the man was squatting in the open doorway talking to the woman who was seated on the front seat but was facing outside with her feet on the pavement. The woman seemed very frightened and appeared to be yelling. The man was trying to keep the woman from getting out of the car. Nickerson then drove away.
>
> Kathleen Hancock, an employee at an advertising agency called "Fonttastic" on Railroad Avenue, came outside when she heard a woman yelling. She observed the couple arguing; the man was asking the woman, who was yelling for help, to get in the car. Hancock walked to Granny's Deli and told "Granny" to call the police. At that point the man and woman were struggling. The woman was trying to get out of the car, but the man was pushing her back inside, telling her to get in the car and go with him. The woman refused. ...

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Standing at the doorway of Granny's, along with four or five other people, Hancock heard the woman say that the man had a gun, while he continually denied it. The woman appeared scared and she was crying and screaming. While repeating that he had a gun and asking for help, the woman grabbed the man's jacket to pull it open, but he held it closed and pushed her back into the car. Next, Hancock observed the man waving a gun in the air. Hancock ran inside the deli and heard shots as she entered the building.

Joan Anuszewski, the owner of Granny's Deli, knew defendant and his wife, Margaret. ... Anuszewski went outside and saw defendant arguing with his wife. Margaret was begging defendant to leave her alone. Anuszewski told her to get out of the car and come into the store, but when Margaret tried to get up, defendant pushed her back down. Anuszewski heard Margaret say that defendant had a gun. Anuszewski then saw defendant pull a gun from the area of his waist and shoot Margaret three times from a distance of only a couple feet. Margaret was sitting in the driver's seat facing forward when she was shot. ...

Linda Sclafani, who also knew defendant and his wife, heard them arguing as she was going into the post office located next to Granny's on Railroad Avenue. She heard defendant "asking or telling" Margaret to go with him, while Margaret was saying, "no, you are going to kill me" and also "you have a gun." Sclafani did not hear what defendant said, but Margaret responded by saying, "well, what's that" as she reached out toward him. ...

When Margaret reached out toward defendant, his jacket opened, and Sclafani was able to see a black object underneath. She backed away at that point and stood with other people in front of Granny's Deli. As soon as the police came around the corner, defendant looked at them and then pulled out a gun from the waist area of the left side of his jacket and pointed it at Margaret, who "put her hands ... toward her head and turned down." Sclafani ran into the deli, but heard the three shots.

The incident was also observed by several other witnesses, who testified that defendant was trying to get Margaret to go with him in the car and that when

she tried to get out, he would push her back down onto the seat.  She was hysterical and was screaming for help, saying that he had a gun.  One witness, Laurie Bellizzi, testified that defendant kept putting his hand by his pocket, and that Margaret repeatedly told him to get his hand away from his gun.  Others also noticed defendant make certain movements with his hand on his jacket.  Bellizzi said that Margaret appeared to be trying to move his hand away from his jacket but that she never actually touched the jacket.  Kelly Tanner claimed that Margaret twice pushed his arm away from his jacket.  Others denied seeing her touch him or grab the area of his jacket.

    After defendant observed the police car arrive, he reached inside his jacket, pulled out the gun and shot Margaret three times in the head.  At no point did any of the witnesses see the gun in her hands. ...

    James Brown, the Franklin Township Chief of Police, responded to the scene in an unmarked police car.  As he was exiting his car, he saw defendant raise his weapon to the back of Margaret's head and then saw the weapon jump and Margaret slump to the ground.  Defendant then looked toward Brown, turned back toward the car and laid the weapon down on the floor behind the driver's seat.  Brown apprehended defendant, who did not resist, walked him over to another vehicle and said: "across the trunk."  Defendant responded: "Okay. You have got me."  Brown described defendant as calm.

    ...

    The autopsy on Margaret Kontakis revealed three gunshot wounds to the back of the head and one on the second finger of the left hand.  The lack of gun powder residue or stippling in the area of the wounds indicated that the gun was fired from a distance of more than 18 inches.

    ...

    Defendant's brother testified that he sold defendant a gun in 1962, that defendant gave him back the gun in 1982 and that he returned the gun to defendant at defendant's request later that year. Defendant told his brother on the evening of March 25 that he had sought out Margaret that day because he had

> to talk to her and that he wanted to hold her
> attention, implying that he had the gun for that
> purpose.  He indicated that she argued with him and
> that there were two struggles.  He also stated that
> "the weapon was fired and just kept going off," that no
> one knew who had the gun and that no one saw what had
> happened.  In June 1985 defendant told his brother a
> different version, claiming this time that Margaret had
> had the gun, "that there was a struggle and she hit her
> head on the gun and the gun went off."  Defendant also
> told his brother that three weeks prior to the incident
> he had noticed that his gun was missing and had advised
> his friend, Mary Ritner, about it.

(State v. Kontakis, Superior Court of New Jersey, Appellate Division, A-2326-85T4, Opinion of July 12, 1989 at 2-9.)

B.   Procedural History

Following a jury trial, Petitioner was convicted in the Superior Court of New Jersey, Law Division, Somerset County, of purposeful murder, contrary to N.J.S.A. 2C:11-3a(1).  He was sentenced to life in prison with no parole eligibility for 30 years.

By opinion filed July 12, 1989, the Superior Court of New Jersey, Appellate Division, affirmed the conviction and sentence. On October 31, 1989, the Supreme Court of New Jersey denied certification.  On motion for reconsideration, the Supreme Court of New Jersey later issued an order granting the petition for certification and remanding the matter to the Appellate Division to reconsider "in the light of the December 8, 1989, memorandum from the Chief Justice in respect to the mental disease or defect defense," based upon the recently-decided Humanik v. Beyer, 871

5

F.2d 432 (3d Cir.), cert. denied, 493 U.S. 812 (1989).  After supplemental briefing, the Appellate Division affirmed the conviction by opinion dated August 30, 1990.  The Supreme Court of New Jersey denied certification on December 4, 1990.

Thereafter, Petitioner filed in this Court his first petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. See Kontakis v. Beyer, Civ. No. 91-3554 (GEB).  By Opinion and Order entered March 4, 1993, this Court found that under Humanik, Petitioner's due process rights had been violated by the jury instructions and, therefore, granted the writ.  This Court dismissed Petitioner's remaining arguments on the merits.  On appeal, the Court of Appeals for the Third Circuit agreed that the jury instructions were unconstitutional, but found that the violation of Petitioner's rights was harmless, and agreed with this Court's determinations regarding Petitioner's remaining claims.  See Kontakis v. Beyer, 19 F.3d 110 (3d Cir.), cert. denied, 513 U.S. 881, reh'g denied, 513 U.S. 1035 (1994).  The Court of Appeals remanded the matter to this Court for entry of an order denying the petition.  On October 3, 1994, the Supreme Court denied certiorari and, on November 28, 1994, denied rehearing.  Kontakis v. Morton, 513 U.S. 881, reh'g denied, 513 U.S. 1035 (1994).

Petitioner filed a second federal petition for writ of habeas corpus, again challenging the constitutionality of the

6

jury charge in light of the Supreme Court's decision in O'Neal v. McAninch, 513 U.S. 432 (1994).  See Kontakis v. Morton, Civil No. 95-4936 (GEB).  By Opinion and Order entered December 14, 1995, this Court dismissed Petitioner's second petition as "successive."  The Court of Appeals denied Petitioner's request for a certificate of probable cause and denied rehearing.  See Kontakis v. Morton, C.A. No. 96-5040 (3d Cir. 1996).  By Order entered March 3, 2000, this Court denied Petitioner's motion for an order vacating judgment pursuant to Federal Rule of Civil Procedure 60(b).  The Court of Appeals denied a certificate of appealability and denied rehearing.  Kontakis v. Morton, C.A. No. 00-5252 (3d Cir. 2001).  The Supreme Court of the United States denied certiorari and rehearing.  Kontakis v. Morton, 534 U.S. 959 (2001), reh'g denied, 535 U.S. 980 (2002).

Thereafter, Petitioner filed a motion for postconviction relief ("PCR") in the state trial court.  The trial court rejected Petitioner's motion for post-conviction relief as both procedurally barred and meritless.  (Letter Opinion dated December 24, 2003; Order Denying Post-Conviction Relief dated February 2, 2004.)  On May 11, 2005, the Superior Court, Appellate Division, affirmed the denial of relief substantially for the reasons set forth in the trial court's opinion.  On September 12, 2005, the Supreme Court of New Jersey denied certification.

This Petition followed.  Petitioner asserts three claims for relief: (1) newly-discovered evidence, consisting of statements by the victim's parents that the victim had possession of Petitioner's gun a year before the murder, was suppressed by the prosecutor and, if available to Petitioner, would have caused him to assert a defense of self-defense and to testify on his own behalf; (2) prosecutorial misconduct in the form of extortion of the Petitioner not to testify by threatening to use faked tapes of telephone conversations if Petitioner did choose to testify; (3) ineffective assistance of trial counsel by failing to establish the lesser-included offense of passion/provocation manslaughter and failing to bring out information about the victim, including her violation of a protective order, her battering of Petitioner, her relationship with another man, etc.  Respondents have answered and this matter is now ready for determination.[2]

## II.   ANALYSIS

As noted above, this is Petitioner's third federal habeas petition challenging his murder conviction.  This fact requires this Court to consider whether this Petition is "second or successive" and, thus, whether this Court lacks jurisdiction to

---

[2] Respondents have failed to assert procedural default as an affirmative defense.  Because of the disposition of this matter, this Court need not raise the issue sua sponte.  See Trest v. Cain, 522 U.S. 87 (1997); Sweger v. Chesney, 294 F.3d 506, 520-21 (3d Cir. 2002), cert. denied, 538 U.S. 1002 (2003).

8

entertain it in the absence of an Order from the Court of Appeals for the Third Circuit permitting its filing.[3]  See 28 U.S.C. § 2244(b).

Section 2244, a provision of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides, in pertinent part:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless --
>
> ...
>
>    (B)  (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
>       (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
>
> (3)  (A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.
>
> ...
>
>    (C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie

---

[3] Because this issue is jurisdictional, it is appropriate for this Court to raise the issue sua sponte.  See Benchoff v. Colleran, 404 F.3d 812, 815 (3d Cir. 2005).

>     showing that the application satisfies the requirements
>     of this subsection.
>
>         ...
>
>     (4) A district court shall dismiss any claim presented
>     in a second or successive application that the court of
>     appeals has authorized to be filed unless the applicant
>     shows that the claim satisfies the requirements of this
>     section.

28 U.S.C. § 2244(b).

Thus, Section 2244(b)(3)(A) creates both procedural and substantive "gatekeeping" mechanisms for the consideration of second or successive habeas petitions. See Felker v. Turpin, 518 U.S. 651, 657 (1996); In re Minarik, 166 F.3d 591, 599-600 (3d Cir. 1999). However, the phrase "second or successive" is not defined.

Prior to the passage of AEDPA, federal courts "employed a collection of equitable principles known as the 'abuse of the writ' doctrine to determine when a petition would be deemed abusive and thus barred from consideration on its merits." Benchoff v. Colleran, 404 F.3d 812, 816 (3d Cir. 2005) (citing United States v. Roberson, 194 F.3d 408, 410 (3d Cir. 1999)). Under the pre-AEDPA abuse-of-the-writ doctrine, a "successive petition" raised grounds identical to those raised and rejected on the merits on a prior petition, and was barred. See Sanders v. United States, 373 U.S. 1, 15-17 (1963). An "abusive" petition was one which raised claims that were available but not asserted in a prior petition or one in which the prisoner had

10

engaged in other conduct that disentitled him to relief. Kuhlmann v. Wilson, 477 U.S. 436, 445 n.6 (1986) (plurality opinion) (citing Sanders, 373 U.S. at 17). See also McCleskey v. Zant, 499 U.S. 467 (1991).

The Court of Appeals for the Third Circuit has held that the gatekeeping provision of Section 2244 "replaced" the pre-AEDPA abuse-of-the-writ doctrine, but the doctrine remains viable to interpret the meaning of "second or successive." Benchoff, 404 F.3d at 816-17. However, reference to the abuse-of-the-writ doctrine does not mean, in all circumstances, that a subsequent petition must be treated as a first petition unless it amounts to a pre-AEDPA abuse of the writ. See, e.g., Felker v. Turpin, 518 U.S. 651, 667 (1996) ("The Act also codifies some of the pre-existing limits on successive petitions, and further restricts the availability of relief to habeas petitioners."). If that were the case, the substantive gatekeeping criteria of 2244(b)(2) might never come into play.

Thus, a petition is not necessarily "second or successive" merely because it follows an earlier federal petition. For example, where a first petition was dismissed for failure to exhaust state remedies, a subsequent federal petition is not "second or successive." Christy v. Horn, 115 F.3d 201, 208 (3d Cir. 1997). See also Altman v. Benik, 337 F.3d 764, 766 (7th Cir. 2003) (Section 2244(b) does not bar subsequent petitions

11

where initial petitions were dismissed "for technical or procedural deficiencies that the petitioner can cure before refiling"); Murray v. Greiner, 394 F.3d 78 (2d Cir. 2005) (same).

"If, however, a petition is resolved in a way that satisfies a petitioner's one 'full and fair opportunity to raise a [federal] collateral attack,' then it does count for purposes of § 2244(b)." Altman v. Benik, 337 F.3d at 766. Courts are in agreement that, where an initial federal petition has been denied on the merits, a subsequent petition attacking the same judgment is "second or successive" within the meaning of § 2244. See Luckett v. McDaniel, 213 F.3d 642 (9th Cir.) (unpubl.), cert. denied, 531 U.S. 891 (2000); In re Page, 170 F.3d 659 (7th Cir.), supplemented by 179 F.3d 1024 (7th Cir. 1999), cert. denied, 528 U.S. 1162 (2000); Dunn v. Singletary, 168 F.3d 440 (11th Cir. 1999); Corraro v. United States, 152 F.3d 188, 191 (2d Cir. 1998); U.S. v. Salemo, 2006 WL 1409743 (E.D. Pa. 2006); Wilson v. York County Common Pleas Court, 2005 WL 1229719 (M.D. Pa. 2005); Leonard v. Dretke, 2004 WL 741286 (N.D. Tex.), report and recomm. adopted, 2004 WL 884578 (N.D. Tex. 2004); Paskins v. Carroll, 2002 WL 1268048 (D.Del. 2002).[4]

---

[4] Similarly, where a petition raises a claim that was or could have been raised in an earlier habeas petition decided on the merits, that claim clearly is "second or successive." Benchoff, 404 F.3d at 817 (citing McCleskey v. Zant, 499 U.S. 467, 493-95 (1991) and Wise v. Fulcomer, 958 F.2d 30, 34 (3d Cir. 1992)).

Here, Petitioner's initial federal habeas petition was denied on the merits. Accordingly, this Petition is "second or successive" within the meaning of § 2244 and this Court lacks jurisdiction to entertain it, absent authorization from the Court of Appeals.

If a "second or successive" habeas petition is filed in the district court without authorization from the appropriate court of appeals, the district court may dismiss for lack of jurisdiction or transfer the petition to the court of appeals pursuant to 28 U.S.C. § 1631. See Robinson v. Johnson, 313 F.3d 128, 139 (3d Cir. 2002), cert. denied, 540 U.S. 826 (2003). However, because § 2244(b) is effectively "'an allocation of subject-matter jurisdiction to the court of appeals,'" Robinson v. Johnson, 313 F.3d at 140 (quoting Nunez v. United States, 96 F.3d 990, 991 (7th Cir. 1996)), a district court may dismiss such a petition only without prejudice. See Ray v. Eyster, 132 F.3d 152, 155-56 (3d Cir. 1997).

Accordingly, this Court must determine whether transfer of this Petition to the Court of Appeals, for consideration as an application for leave to file a "second or successive" petition, would be in the interest of justice. The only claims asserted in this Petition that arguably come within the substantive gatekeeping provisions of § 2244(b)(2) are the claims resting on

13

allegedly "newly-discovered evidence."[5] The Court of Appeals may authorize the filing of such a claim only if, "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. 2244(b)(2)(B)(ii).

The newly-discovered evidence to which Petitioner refers are statements given to police by the victim's parents:

> that they knew their daughter had the gun, which she had taken from their home, and brought to the scene of incident, where defendant defended himself against deadly force, in an act of self-defense, while attempting to disarm his wife. Statements are reliable and material, and unavailable, due to suppression by Prosecutor Bissell.

(Petition, ¶ 12(a).) The chance of Petitioner meeting the substantive gatekeeping requirements of § 2244(b)(2)(B)(ii) is remote.

The facts found by the Appellate Division and recited herein reflect that the evidence against Petitioner was overwhelming.

---

[5] This Court previously considered and rejected Petitioner's claim of prosecutorial misconduct related to threatened use of the tapes. In addition, except to the extent that the Petition could be construed as asserting a claim of ineffective assistance of counsel based on failure to obtain the allegedly suppressed statements, Petitioner's claims of ineffective assistance of counsel could have been asserted in the first federal habeas petition.

14

The state PCR court rejected Petitioner's claim, finding that the allegedly newly-discovered evidence was

> not material to the issue of who possessed the gun on March 25, 1985. Just because defendant contends that Margaret Kontakis possessed the gun one year prior to the shooting is not conclusive of the issue of possession on the day of the shooting. Defendant merely provides this "new evidence" as contradictory evidence, not material evidence. ... Furthermore, this Court is of the mind that the "new evidence" is not of the sort that would have changed the outcome of the case. The evidence is not dispositive of the issue of who possessed the gun on March 25, 1985. As the previous courts have recognized, there was overwhelming evidence at the trial of defendant's guilt. As such, this new evidence would not upset the jury's previous verdict.

(Letter Opinion dated December 24, 2003, at 7-19.)

Similarly, the Court of Appeals for the Third Circuit has previously commented on the strength of the evidence against Petitioner. In finding harmless the erroneous jury instruction on "mental disease or defect," the Court of Appeals stated:

> Of course, the evidence that Kontakis acted purposely and knowingly is manifest. It demonstrated that: (1) two days before the shooting Kontakis rented a car so he could follow his wife secretly in a car she would not recognize; (2) on the day of the shooting, he waited outside Granny's Deli and the post office for his wife to enter the post office; (3) after she left the post office he shoved her into an automobile; and (4) after arguing with his wife, he shot her three times in the head from a close distance. It would be difficult to produce more compelling evidence that a person committing a homicide acted purposely and knowingly.

<u>Kontakis v. Beyer</u>, 19 F.3d 110, 118 (3d Cir. 1994). Elsewhere, the Court of Appeals noted, "The trial record is replete with

15

eye-witness testimony that Kontakis carefully fired three bullets into his wife's head." Id. at 120.

Accordingly, it would not be in the interest of justice to transfer this Petition.  This Court will dismiss the petition for lack of jurisdiction rather than transfer it.  The dismissal will be without prejudice to Petitioner's filing an application under § 2244(b)(3) in the Court of Appeals.

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find it debatable whether this Court is correct in its procedural ruling.  No certificate of appealability shall issue.

### IV.  CONCLUSION

For the reasons set forth above, the Petition must be dismissed without prejudice.  An appropriate order follows.

  S/Garrett E. Brown, Jr.  
  Garrett E. Brown, Jr.  
  Chief Judge  
  United States District Court

Dated: 9/29/06

17